This is a suit for damages to an automobile and for physical injuries sustained by Martin Guillory, the owner and operator of the automobile, as the result of an accident said to have been caused by the negligence of the driver of a bus, owned and operated by the defendant, Bordelon Lines, Inc. Plaintiff sued for $10,000 for physical injuries and $360 as damages to his automobile, of which amount $310 was claimed on behalf of the Massachusetts Bonding and Insurance Company which had paid plaintiff this sum under a policy which it had issued to plaintiff on his automobile.
An exception of no cause of action was filed insofar as the sum of $310 was concerned, which exception was maintained. No appeal was taken from this judgment.
The defendant denies all allegations of negligence on the part of its driver and contends that the accident was due entirely to plaintiff's negligence. In the alternative, it pleaded contributory negligence. *Page 397 
There was judgment below in plaintiff's favor in the sum of $2500, and the defendant has appealed.
Plaintiff alleges that on June 10, 1939, shortly after dark, he was driving his Plymouth Sedan on the airline highway in a westerly direction towards the City of Baton Rouge, on the northern or proper side of a black line which dissects the highway, at a speed of about 50 miles per hour; that there were no vehicles ahead of him moving in his direction, but that traffic in the opposite direction was very heavy; that one of defendant's busses proceeding in the opposite direction or towards the City of New Orleans, on its right or south side of the black line, suddenly drove onto plaintiff's side of the roadway with the intention of passing an automobile ahead of it, which was moving in the same direction; that, at the time that the defendant's driver executed this maneuver, there was not sufficient space between the defendant's bus and plaintiff's automobile and that a collision was, therefore, imminent and that the only way he could avoid contact with the bus was for him to drive around the side of the bus on the dirt shoulder on the northern side of the highway; that, in doing so, he struck a sign directly in his path which wrecked his car and caused the injuries for which this suit is instituted.
Plaintiff testified in substantial accord with the allegations of his petition, as did John Owens Conner, who was traveling in his automobile a short distance behind the bus. Conner said that it was impossible for Guillory to avoid striking the bus unless he took to the shoulder of the road. He placed Guillory's car a city block away from the bus when it attempted to pass the other automobile and he believes that the bus could have completed the maneuver and resumed its proper place on the highway if the driver had speeded up, but that he seemed to delay too long in crossing over. He said that the Guillory car turned over several times and came to rest on its left side.
As against the plaintiff's testimony Ellis Bordelon, the driver of the bus, who, incidentally, is the vice-president of the defendant corporation, testified that he was driving about 50 miles per hour, and when about two miles above Kenner, Louisiana, he approached a vehicle which was going about 35 miles per hour and that he wanted to pass it; that his bus being higher than the other vehicles on the roadway, he was able to look over the top and ascertain that the roadway was clear; that there were no vehicles on the roadway nearer than one-quarter of a mile; that he saw the Guillory car which was also traveling at about 50 miles per hour and that there was ample time and space for him (Guillory) to pass without leaving the highway; that the Guillory car was swerving in and out apparently out of control and that, after the accident, it came to rest about one-eighth of a mile from the position of his bus; that the bus, after the accident, was in the act of resuming its proper place on the highway "just about half and half"; that as the Guillory car got within 100 yards of his bus it seemed to be out of control and it turned over and started rolling on its right side ahead of the bus and when it passed him it was still turning over; that he got out of the bus and went to the aid of Mr. Guillory and drove him to the Charity Hospital in New Orleans.
Bordelon is corroborated by Mrs. P.D. Gremillion and her thirteen year old son, who were passengers in the bus and seated directly behind the driver. Mrs. Gremillion testified that the bus was being driven about 45 or 50 miles per hour when it passed the vehicle in front of it, and that as it was passing the vehicle, the Guillory car was one-quarter of a mile "up the road" and that when two or three hundred yards away it seemed that Guillory lost control of the car and that it turned over ahead of the bus. Rudolph Gremillion, the young boy, did not testify in as much detail as his mother, but he did say that he saw the Guillory car and that it seemed to be out of control for he saw it turn over.
Rule 7(c) of Section 3 of Act 286 of 1938 reads as follows: "The driver of a vehicle shall not drive to the left side of the center line of the highway in overtaking and passing another vehicle traveling in the same direction, unless such left side is clearly visible and free from oncoming traffic for a sufficient distance ahead to permit such overtaking and passing to be made in perfect safety; provided, that whenever an accident occurs under such circumstances, the responsibility therefor shall rest prima facie upon the driver of the vehicle doing the overtaking or passing."
In considering the propriety of the bus driver's action in attempting to get ahead of the vehicle in front of him under the prevailing circumstances, it is important to determine the distance between the Guillory car and the bus at the time the attempt was made. This distance is variously *Page 398 
estimated at from 100 yards to one-quarter of a mile, Guillory contending that he was about one city block away and Bordelon estimating the distance to be about 300 yards and, again as a quarter of a mile. When it is considered that both vehicles were traveling at the rate of 50 miles per hour they were approaching each other at the rate of 100 miles per hour, which is about a mile and a half per minute or one-quarter of a mile in ten seconds, so that even under the estimate of the bus driver, it is doubtful whether there was sufficient time to complete the maneuver he had undertaken and clear the path for the oncoming Guillory car.
[1, 2] As we have seen, the bus driver is presumed to be negligent in view of the provisions of the highway act which we have quoted. It cannot be said that he has overcome this presumption, particularly in view of the finding of the lower court on the question of fact.
Nor do we believe that Guillory was guilty of contributory negligence. Considering the emergency with which he was confronted, he cannot be held to the same accountability for his conduct. It may be that Bordelon, the driver of the bus, undertook to pass the vehicle in front of him at a time when there was sufficient opportunity for him to do so, as was testified to by plaintiff's witness, John Conner, but Conner said that he seemed to falter and to relax instead of accelerating his speed when abreast of the vehicle he intended to pass.
[3] Much is made of the fact that Guillory did not abate his speed when the bus blocked the roadway in front of him. In the few seconds in which he might have done so he testified that he attempted to do so as he left the pavement and entered the shoulder of the road, but his car began to skid causing it to roll over several times. If he was only 100 yards distant when the bus entered his side of the highway, as he claims, there was no time to do anything but get off the road.
Our conclusion is that the defendant is liable.
[4] Plaintiff sues for $50, the amount of damage which was not covered by his insurance and, of course, he is entitled to this amount.
[5] Concerning his physical injuries there were no fractured bones, but contusions of the back, abrasions and possible myofascitis, which is said to be "an involvement of the muscles and ligaments and not necessarily involving the sacro-iliac". Plaintiff was employed by the Standard Oil Company and the physician for that company, Dr. Hoth, treated him. When asked whether any permanent injuries were sustained by plaintiff, he replied: "I think an injury of that type might result in some permanent discomfort, even pain, on exertion, but not in disability in the sense that he would be unable to carry on his duties." The trial judge allowed Guillory $2,500, which we think excessive and should be reduced to $1500, plus $50 as damages to his automobile, consequently, and
For the reasons assigned the judgment appealed from is amended by reducing the amount awarded plaintiff from $2500 to $1550 and as thus amended it is affirmed. Costs of appeal to be borne by plaintiff.
Amended and affirmed.